JOHNSON *vs.* RICH and others.

The act of the legislature, passed March 26, 1849, and known as the " free school law," is not unconstitutional; although it submits the question to the people to determine, at the next annual election, whether the act shall or shall not become a law.

THIS action was commenced in a justice's court in Monroe county, against the defendant, for property belonging to the plaintiff, taken and sold by virtue of a school warrant, issued by the defendants for the collection of taxes, under the free school law of 1849. The defendants justified, being trustees of the district. The jury found a verdict for the defendants. The plaintiff appealed to the county court of Monroe county, from the judgment rendered by the justice, which court reversed the judgment on the ground that the law was unconstitutional. The defendants appealed to this court from the judgment of the county court.

*Geo. P. Townsend,* for the defendants.

*J. D. Husbands,* for the plaintiff.

JOHNSON, J.    This case turns entirely upon the question of the constitutionality of the act of March 26, 1849, known as the free school law.

The question is one of great interest, involving the powers of the legislature in the enactment of laws generally, under the constitution of the state, and deserves a diligent and careful examination, and more especially so, since, as it is understood, there have been decisions by several of our judges adverse to its constitutionality. The plaintiff's counsel denies that any such law was ever enacted by the legislature. The act upon its face, as it stands in the statute book, of which all our courts are bound to take judicial notice, shows that it was passed by the senate

Johnson *v.* Rich.

and assembly in the usual form, "three-fifths being present." It is conceded, however, that the act in question passed regularly through all the forms of legislation required by the constitution, and received the sanction of the executive in due form, and that the enacting clause is in the precise form prescribed by the constitution.

But it is insisted that the act itself furnishes internal evidence that the legislature did not enact it, and that this evidence is furnished by the latter sections, from the 10th to the 14th inclusive. These sections are regarded as necessarily nullifying and striking out the enacting clause, and delegating all the power over the subject, which the constitution has conferred solely upon the legislature, to the people. By these sections, it is urged the legislature have undertaken to invest the electors with the power of enacting laws at the ballot box.

If it be true that this statute was not enacted by the legislature, but by the people undertaking to act in a legislative capacity, it can not be upheld. Article third of the constitution, section one, declares that the legislative power of this state shall be vested in a senate and assembly. No authority is given to the legislature, to confer legislative power, except upon boards of supervisors of the several counties, and that only "of local legislation." It follows therefore, that if this statute was enacted by any other body than the senate and assembly, it is wholly unauthorized and void.

But let us examine these sections and see whether the legisture by including them in the enactment, nullified their own act, and rendered it void.

Section 10 declares that the electors shall determine by ballot at the next annual election in November, whether the act shall or shall not become a law. Sections 11, 12 and 13 provide for the manner in which the poll lists should be furnished, the form of the ballot, the manner in which it should be folded, the box in which it should be deposited, and for the canvassing of the votes so cast. Section 14 provides that in case a majority of all the votes in the state shall be cast against the new school law, this act shall be null and void; and in case a majority of all the

Johnson *v.* Rich.

votes in the state shall be for the law, this act shall become a law, and shall take effect on the 1st day of January, 1850.

Much stress has been laid upon the tenth section of the act, and it is claimed that by that section the legislature enacted that they would not enact the law. But the section admits of no such interpretation. It is to be read in connection with the 14th section, and it is obvious that the scope and purport of both sections are the same. The question is not at all varied from what it would be, were the 10th section stricken out, and the objection left to stand upon the 14th section alone. The substance and plain import of the two sections taken together, are that the act shall become a law on a day certain, upon the condition that a majority of all the votes cast in the state, upon the subject shall be, when canvassed, found in its favor; and that otherwise it shall be null and void. The proviso is not that the statute should not be enacted by the legislature, but that it shall not become operative as a law after its enactment, except upon the condition or proviso being fulfilled. In short, they enacted, that the enactment should not become a law of the land, except upon the happening of a certain event, which was a majority of the votes being cast in its favor. But the position is assumed and urged with great strenuousness, that because the act in question could not become a law, unless a majority of the electors should vote in its favor, it follows as a necessary consequence, that the electors passed the act at the general election, and that the act undertook to clothe them with legislative power.

But this consequence by no means follows. The same might be said of every act which is passed to take effect upon the happening of some event, either certain or uncertain. It is no law unless the event happens, and yet it has never been supposed that any legislative power was conferred upon the agency by which the event was brought about. All our statutes, unless some other time is prescribed, take effect as laws, in twenty days after they are enacted, and not before. This is by a general statutory provision. It is conceded that a longer or shorter time may be prescribed, a day or a year. In every such case the enactment is of no force as a law, until the period arrives.

Johnson *v.* Rich.

It may have the vital principle in it, but its activity is suspended until the appointed period. Before that time no rights can be acquired under it: no one is responsible for violating its provisions. It is in short a dead letter until the fixed period. It does not follow from this, however, that the legislature do not enact the law; nor was it ever dreamed that by fixing a remote day, the legislature were conferring legislative power upon the agencies which produce the revolutions of the globe. The whole difficulty seems to me to have arisen from confounding the distinction between the exercise of legislative power in framing and enacting laws, or a statute which is to become a law; and the exercise of another altogether different, and foreign but subordinate power, in producing the event or result upon which such enactment is to take effect as a law.

The distinction seems to me too broad and obvious to be overlooked by any mind the avenues to which are not too firmly barred by foregone conclusions, and which is unbiased by a fixed habit of constitutional scruples. In either case, where an act takes effect on a day certain, or upon the happening of some prescribed event which is altogether uncertain and contingent, it is a part of the enactment, and the exercise of the legislative power, which fixes the day or prescribes the event. These are subjects of legislative appointment and authority. The agencies which fulfill the condition or proviso, or defeat it, are no part of the legislation, but altogether secondary and subordinate. It is true that the enactment would not become a law without the concurrence of the event, but it is the paramount force and authority of the enactment, nevertheless, which gives it the character of a law. That is the vital principle which alone gives the event its power.

In regard to the act under consideration, it came from the hands of the legislature, complete and perfect in all its provisions and details. All duties under it were prescribed, and all penalties for its violation. It was just such an act, as the legislature in the full exercise of their discretion thought fit and proper to pass. It must be admitted that the subject of the enactment is peculiarly within the scope of legislative guardian-

ship and authority, and the object in the highest degree benefi-
cent and salutary.

What right or authority did the legislature confer upon the
electors? were they authorized to change the act, to amend or
modify its provisions, or substitute some other act of their own
framing, and pass that in lieu of the one submitted? Nothing of
the kind. Such power might have been legislative power. But
they were simply authorized to express their assent or dissent
in a prescribed mode, and they did nothing more. After the
vote was given, and canvassed, all the provisions of the act re-
mained as they were before. It did not even then become a law,
but had to await the day the legislature had prescribed, some
two months after. To call this legislation is a sheer confound-
ing of all proper distinctions.

It is urged that the constitution does not authorize legislation
of this character. This is a mistake. The constitution, art. 7,
sect. 12, expressly provides, that certain laws passed by the
legislature shall not take effect until they have been submitted
to the electors, at a general election, and received a majority of
all the votes cast for and against it, and no such law is to be
submitted to be voted on within three months after its passage.
The constitution, therefore, not only recognizes this kind of leg-
islation, but expressly requires it in certain cases, and forbids it
in none. The constitution obviously does not treat this vote of
the electors as legislation, but in the light of ratification or ob-
jection merely. Because all legislative power is expressly and
unqualifiedly conferred upon the senate and assembly. This is
precisely what it is. And this seems to me to cover the whole
ground of controversy. It would be sufficient, however, inde-
pendent of this, to say that the constitution did not prohibit it.
Because the full unqualified power to legislate for the state, upon
all constitutional subjects of legislation, necessarily comprehends
the power to prescribe not only the time when an act shall be-
come operative as a law, but also the event or condition upon
which it shall become so.

To hold that the legislature may enact laws but shall not pre-
scribe the time, or event, or condition, upon which they shall

Johnson *v.* Rich.

take effect, would be to qualify and abridge powers clearly and necessarily vested in them.

If it be conceded they may prescribe conditions, and pass acts to take effect only upon the happening of some event or contingency, which is altogether uncertain, as the declaration of war by a foreign power, or the failure of the revenues of government from the ordinary sources, or the like; it must follow that they may prescribe any event or contingency they may deem proper. Unless this discretion is limited and controlled by some constitutional provision, it can make no difference whether the condition is the result of an election, or the breaking out of the cholera. This must be so, unless it can be shown that there is some original and inherent twice in a vote of approval by a majority of the electors, which operates as a positive and irresistibly annulling force, over, and independent of, all constitutional grants and prohibitions. This is a task I think no judge will undertake.

The constitutional authority of the legislature to pass laws to take effect upon the happening of some event which might or might not happen, was scarcely denied upon the argument. It is fully admitted by the learned judge who dissents from the conclusion of the majority of the court in this case, and is well sustained by authority and usage. A distinction is however sought to be taken, between an event like the result of an election and some other event happening in the order of nature, or in the intercourse between nations, or in the ordinary progress of the affairs of government. It must be perfectly apparent, however, as it seems to me, that if there be any distinction, it is a difference of degree merely, and not of fundamental principle upon which grave constitutional questions turn. Admit the principle and no distinction between the cases supposed can be found which does not resolve itself at once into a question of policy or expediency merely. The line of demarcation between a vote upon an act, after it has passed, by way of ratification or approval, and which operates to fulfill some condition, or to satisfy some proviso in the act itself, and the legislative function in framing acts and voting upon their passage through the legislature is broad, clear and well defined. I think I have shown

quite satisfactorily, by a reference to the constitution, that it nowhere forbids, even by implication, the submission of acts after they have passed the legislature, to the people, for their approval, and making such approval the condition upon which the act shall become operative as a law, but rather sanctions it.

This was not a law creating a public debt, or it could not have taken effect until it had been submitted to the people in the manner that it was submitted, by the express language of the constitution. But it was an act which if it became a law, involved the necessity of general taxation, for great public purposes, and although it might have been enacted as a law, without consulting the electors, and even against their known wishes, the submission, so far from rendering it unconstitutional and void, ought not to be regarded as even an abuse of legislative discretion.

The legislative functions are just as fully and completely exercised where an act is passed to take effect at a future day, or upon the happening of some uncertain event, or the ratification of some other body, as when the act takes effect immediately. The time and the condition are parts of the enactment, the same as any other provision.

I confess however, that I am entirely opposed, upon principle, to this mode of legislation, in all cases where it is not required by the clear and express terms of the constitution. There may be occasional exceptions, in new and extraordinary cases. But as a general rule I regard it as an unwise and unsound policy, calculated to lead to loose and improvident legislation and to take away from the legislator, all just sense of his high and enduring responsibility to his constituents and to posterity, by shifting that responsibility upon others. Experience has also shown that laws passed in this manner, are seldom permanent, but are changed the moment the excitement under which they are ratified, has abated or reversed its current. Of all the evils which afflict a state, that of unstable and capricious legislation is amongst the greatest.

The only authority relied upon on the argument to show the law unconstitutional, was the case of *Parker* v. *Commonwealth*, (6 *Barr*, 507.) I have examined that case with great care, and am

Johnson *v.* Rich.

constrained to say, with all due respect, that in my judgment it can not stand the test of time and scrutiny, upon the reasons assigned by the learned judge who delivered the opinion of a majority of the court. The case arose under the excise law of Pennsylvania passed in 1846, which was similar, in its provisions, to our late statute on the same subject, the principal difference being that there the electors voted by counties, instead of towns as under our act. It is somewhat difficult to determine the precise point upon which the case turned, owing to the great number of irrelevant topics introduced, and the general and discursive manner in which they are all discussed. The principal ground of objection seems to have been, that it was left to the electors to determine in their respective counties, by ballot, whether the new law should take effect, or the old one still remain in force, in their respective counties. This was regarded as authorizing the people to legislate, and for that reason mainly the law was adjudged unconstitutional. The learned judge, in the same opinion, nevertheless holds the act of 1836, providing for the establishment of common schools in Pennsylvania, free from all constitutional objection ; and yet, according to the opinion, that act in terms provided that it should be submitted to the qualified electors of each district to determine, by ballot, whether the system should be adopted in their district. If a majority voted in favor of the system, the law took effect in such district, and it forthwith became entitled to a portion of the public fund. In districts where the majority of the votes was adverse, the law was not to take effect, but was suspended until a favorable vote should be obtained. The learned judge professes to see a clear distinction between the two cases, in principle, but it has eluded my scrutiny. The only difference I can perceive exists in the subject matter of the two acts.

It may not be amiss, in reference to this case, to suggest that in all the multitude of prosecutions under our late excise law, in every part of this state, no such objection occurred to any judge or counsel. But what is still more to the purpose, the supreme court of Pennsylvania, in two subsequent cases, have entirely receded from the ground attempted to be maintained in that

case, although they have not openly and in terms overruled it. In the case of *Commonwealth* v. *Quarter Session*, (8 *Barr*, 391,) it was held distinctly that the legislature might repeal a law through the secondary means of a popular vote. A new township had been erected from a part of another township, and subsequently the legislature passed an act submitting it to the electors of the old and new townships, to determine by ballot whether the new township should continue as such, or be annulled. If a majority of the votes were in favor of the new township, it was to remain : if opposed, it was to be annulled and remain as though no township had been erected. This was adjudged constitutional. In *Commonwealth* v. *Painter*, (10 *Barr*, 214,) the same question arose under an act submitting it to the determination of the electors whether the seat of justice in Delaware county should continue where it then was located by law, or be removed to some other place. This was also held to be constitutional. In both these cases the authority of *Parker* v. *The Commonwealth* was invoked as establishing a contrary doctrine, but without avail. The court held that the case did not apply, and they take occasion to say that the case had been misunderstood. That, in that case they determined nothing, but that the general assembly could not delegate to the people, the power to enact laws by the exercise of the ballot. The principle was doubtless correct, but its proper application to that case is another question. In this case of *Commonwealth* v. *Painter*, the court cite with approbation, as " a strong illustration of the faculty of the legislative power," the act of congress of July 9, 1849, providing for the retrocession of the county of Alexandria in the district of Columbia to the state of Virginia. By one of the sections of that act it was submitted to the qualified electors of the county to determine the question of retrocession. If a majority of the votes were against the retrocession, the act was to be null and void, and if in favor it was to take effect and be in full force— almost precisely like our act under connsideration. The court in commenting upon this act of congress, say, that it must " be considered as high authority and a precedent in the development of the constitutional function of the legislative power," and one

reason assigned is, that many of the most profound constitutional lawyers in the Union, were in congress at the time, and participated in its enactment.

I have bestowed more attention upon the case of *Parker* v. *The Commonwealth* than the occasion would seem to justify, were it not that it has been the great source of mischief, and confusion of ideas, upon subjects of this character. But since the supreme court in that state have wisely retreated from the position there assumed, I trust that it will no longer be permitted to vex and confound us here.

The decisions in the supreme court of our sister state are now clearly in favor of the constitutionality of the act under consideration. The case of *Cargo of the Brig Aurora* v. *The United States,* (7 *Cranch,* 382,) is also a strong case in support of the same general principle. In every one of these cases, even that of *Parker* v. *The Commonwealth,* the constitutional power of the legislature to enact laws to take effect at a future time, upon the happening of some event which is uncertain and contingent, is fully recognized and asserted. But it seems to me that no authority is necessary to sustain such a proposition. The exigencies of the government, both state and national, must often call for the exercise of such a power by their respective legislative bodies, and it can not be doubted that it is clearly within the large grant of legislative power conferred by our constitution. It has also the sanction of long usage, without dissent or question till recently.

I am therefore clearly of the opinion that the act in question is constitutional, and that the judgment of the county court should be reversed, and that of the justice affirmed.

Selden, J. concurred.

Welles, J. dissented.

Judgment reversed.