Bradley agt. Baxter and others.

## SUPREME COURT.

BRADLEY agt. BAXTER AND OTHERS.

The act of March 26, 1849 known as the FREE SCHOOL LAW, *held*, to be *unconstituitonal and void.*

And the whole system of similar legislation, which has been rapidly increasing of late years in this and many other states of the Union, of submitting to the people to determine at an annual election whether a proposed act should or not become a law, was also held to be a violation of the spirit and meaning of the constitution. The law making power of this state is, by the constitution (with some specified exceptions) *vested* in the *legislature,* consequently no other power is authorized to exercise the same functions.

This kind of legislation is widely different, and, indeed, has no analogy to enacting *conditional* laws. The circumstances to meet which such laws are enacted, are contingent and uncertain; but the laws themselves express the *deliberate will* of the law making power, provided the circumstances happen to which the laws are intended to apply.

(*It will be seen that this decision is adverse to that of Johnson agt. Rich*, 9 *Barb*. 630.)

Oswego General Term, *April* 1853. GRIDLEY, ALLEN, HUBBARD, and PRATT, *Justices.* An action was commenced by the plaintiff against the defendants, trustees of a school district in the village of Whitestown, to recover for property taken to satisfy a district tax. A portion of the tax was levied under the Free School Law of 1849. The action was commenced in August 1850, and tried before Judge GRIDLEY, and a verdict given for the plaintiff. Upon appeal by the defendants to the general term, among other points, the question of the the constitutionality of the free school act was involved.

T. H. FLANDREAU, *for Plaintiff.*

H. DENIO and W. TRACY, *for Defendants.*

By the Court, PRATT, Justice.—Several objections were taken upon the trial of this cause, to the regularity of the proceedings on the part of the district in levying the tax in question, which it is not necessary for me to examine, as we all concur in the conclusion that the act of March 26th, 1849, commonly termed the Free School Law, under the provisions of which a

Bradley agt. Baxter and others.

portion of the tax in question was levied, was not at the time of such levy, a binding and valid law of the state. It only becomes necessary, therefore, for me to discuss this point in the case, and to state briefly some of the reasons upon which our conclusion is based.

Although the legislature has since the commencement of this suit ratified the act, and legalized all proceedings under it, so that our decision can not affect very seriously, or extensively, existing interests, yet we did not arrive at such conclusion without a deep-felt sense of the responsibility which the court would assume in pronouncing unconstitutional and void, not only this particular act, but a whole system of legislation which has been rapidly increasing of late years, in this and many of the other states of this Union. But we recognize the constitution as the paramount law of the state, prescribing the fundamental principles upon which our government is based; and when a case comes before the courts, involving the question whether those principles have been violated in the action of any department of the government, we may not evade the responsibility of meeting the question firmly, and deciding it in accordance with our honest convictions in the premises.

As I understand the act under consideration, and the method of procedure by which it found a place in our statute books, the simple question is presented whether the legislature or law making power of the state is vested by the constitution (with some specified exceptions), exclusively in the legislature, or whether the power is only conferred upon that body to be exercised or not, at its option—whether the obligation and duty rests upon that body alone to pass upon the expediency or inexpediency of all proposed laws—or whether it may, whenever it may deem it proper, relieve itself from such responsibility and refer the question to the people at large to be decided at the ballot box; the legislature acting only as a committee to draw up the law in due form, to be thus presented to the people, or some power, other than themselves to adopt or reject it.

The proposition thus presented would hardly require comment and yet the act in question, if I understand it, was the result of precisely this kind of legislation. I am aware that it is insisted,

and was strenuously urged upon the argument that the legislature has power to enact conditional laws—laws to take effect upon the happening of some future unknown and contingent event. Nobody will contest this proposition. The legislature may undoubtedly provide by its enactments, for anticipated or uncertain events, which may or may not happen. Most laws are intended to be prospective in their operation and they may provide in themselves to take effect only on the happening of some uncertain or contingent event. Several cases of that kind of legislation were cited upon the argument. Some were cases of laws enacted to take effect, upon the performance or nonperformance of some act by a foreign government, by a municipal corporation and in some cases by an individual. But in none of these cases was the act of the legislature made to take effect, upon any decision of this foreign or extraneous power upon the expediency of the act itself. Those laws were to take effect upon the happening of certain events, which would in the opinion of the legislature or law-making power, render such a law expedient and proper for such a state of things. The circumstances, to meet which such laws were enacted, were contingent and uncertain; but the laws themselves expressed the delibrate will of the law-making power; provided the circumstances should happen to which the laws were intended to apply.

But in the case under consideration, the subject matter upon which the law in question was to operate, was neither contingent nor uncertain. The necessity for the law was just as imperious before the decision of the people at the ballot box had been ascertained as it was afterwards. The evils, which the law was designed to remedy, were neither augmented nor diminished by that decision. Everything, so far as the subject matter of the law was concerned, remained *in statu quo.* What then was the condition upon which the law was to take effect? What was the uncertain and contingent event upon the happening of which it was to become a valid and binding law? It was simply no more or less than the decision of the people at the ballot box upon the expediency of the law itself. In fine it was submitting to them, the question of the adoption or rejection of the proposed law. It was creating a new legislative power, which should

Bradley agt. Baxter and others.

excercise one of the most important functions in legislation, to wit: the final decision of the question of the adoption or rejection of a proposed bill.

The act in question, when it came from the hands of the governor with his signature attached, did not necessarily express the will of a single member of either house upon the subject matter of the law. It expressed this much and no more: That it was the will of the legislature that the question be submitted to the people at large to decide, whether it should become the law of the state or not. The governor by signing it only approved of thus submitting the question to the people. The language of the act itself shows clearly that such was the intention of its framers. (Sec. 10.) "The electors shall determine by ballot at the annual election to be held in November next whether this act shall or not become a law." It will be seen by this provision that the question *upon the final passage of the bill* was to be taken at the polls.

And the provisions of the act, prescribing the heading and form of the ballots, and the effects which should result upon the majority of votes being for or against the law, show clearly, that the members of the legislature intended to evade the responsibility of passing upon the question, whether the act should or should not become a law. No member of that body who voted for the bill in its several stages through the two houses, could be charged with any inconsistency of conduct for being found opposing it at the polls, or *vice versa*. No member had voted for a free school law, but simply to submit the question to the people and to confer on them the power to pass or reject the bill. The question then recurs: Is this kind of legislation within the spirit and meaning of the Constitution?

It is conceded that it is not expressly forbidden by that instrument; but is it not forbidden by a necessary and reasonable implication?

'Every government," says an able writer upon constitutional law, "must include within its scope, at least if it is to possess suitable stability and energy, the exercise of the three great powers upon which all goverments are supposed to rest; viz: the executive, the legislative, and the judicial powers. The

manner and extent in which these powers are to be exercised, and the functionaries in whom they are vested constitute the great distinctions which are known, in the forms of government" (*Story on Const., Book 2, p. 1*). In the states of this Union, whilst all the powers of government are supposed to emanate from the people, and to be exercised for their benefit, there is no principle more fundamental nor more universally recognized during their whole history than that these powers are not to be excercised by the people directly, but by representative bodies, selected from the people to represent them in this respect. This, and the separation of the great powers of government into different departments, to be exercised by separate and distinct functionaries lie at the very foundation of every state government.

Not a state in the Union is there that does not recognize these principles as primary and fundamental, the very foundation upon which the permanency and stability of its institutions rest.

The patriots and statesman who laid the foundations of these noble political edifices of which we are all now so justly proud— of these institutions of government which should secure to each individual however humble all the freedom, compatible with the general welfare and safety, were quite as solicitous to guard against the evils necessarily connected with, and growing out of a consolidated democracy, as those of an absolute monarchy. The one was deemed quite as inconsistent as the other with that great idea which was the pole star of all their efforts and all their aspirations; *Liberty regulated by law*.

It can not be necessary for me to go into an extended discussion of the importance of this representative principle to a free government, and of the necessity of guarding and cherishing it as the sheet anchor of the permanency and stability of our free institutions, and of their efficiency in securing the great objects of all good governments, to wit: the happiness and prosperity of the people.

These questions have been so often discussed by others much more able to do them justice than myself, that the task is unnecessary. The reports of the convention that framed the constitution of the United States, and the public documents of that day, are full of able discussions upon this subject, and I may also

refer to the opinions of the judges in two recent decisions in the highest courts of the states of Pennsylvania and Delaware, which I shall have occasion hereafter to cite. It only becomes necessary, therefore, I apprehend, to examine and ascertain whether these fundamental principles are secured to us by the constitution, or whether they are left by that instrument to the ever shifting and ever changing legislation of the state. Assuming that this representative principle lies at the foundation of our government, and that the constitution was designed to designate the functionaries by whom, and the manner and form in which it shall be carried into execution, the question I apprehend will be found not difficult of solution.

Upon examining that instrument we find the executive, legislative and judicial powers of government properly distributed to separate bodies, and the necessary power delegated to each. In this distribution the legislative power of the government is declared to be *vested* in a senate and assembly. The number composing each branch is fixed, and the manner of their election and the duration of the term of office is prescribed.

The number necessary to constitute a quorum for the transaction of business, the number necessary to pass the different kinds of laws is there designated—the form of the enacting clause of all laws is given, and freedom of debate secured.

The provision of that instrument that the legislative power of the government shall be *vested* in a senate and assembly, of itself would seem to preclude the idea that there is any other power authorized to exercise the same functions. Especially when we observe the care which the framers of that instrument have taken in organizing these bodies, and in providing rules by which the merits of proposed laws may there be discussed freely, and by which no law can be passed without a concurrence of a majority of those elected to each branch, we can not resist the conclusion that it was the design of the constitution to vest the law-making power in the legislature and no where else. It is true that the governor is endowed with a qualified veto, and in some peculiar cases the power is given to the legislature to refer certain great financial questions to the people. These are specific powers, defined by the constitution itself, and afford in my opinion

no authority to the legislature to refer to the people other matters, over which no such power is granted. As to such matters, the exclusive right to legislate is *vested* in that body and that alone.

Whence, then, is the authority derived for the legislature to divest itself of this power? The mandates of the constitution are as binding upon the people in their sovereign as in their individual capacity. If by the fundamental law the power to make the necessary laws of the country be delegated to the legislature, the people can not, except by changing the constitution, resume the power.

Again it is a well settled principle that where a trust or confidence is confided to any person or class of persons the trustees can not delegate that trust to others. And what trust, what confidence is more sacred, more responsible than the power to make the laws of a free people?

*The power is not only delegated to the two branches of the* legislature, but there is an obligation—a duty imposed upon them to make all such laws as are necessary and proper for the interests of the people, and good order of the body politic—a duty from which they may not discharge themselves except by faithfully and honestly discharging that duty. If they may discharge themselves from the responsibilities which the constitution has devolved upon them in one case, they may in another, and this most important of all the functions of government is entirely afloat, vested, in fact, nowhere. If a bill may in this manner be submitted to a vote of the people at the ballot box for adoption or rejection, it may, so far as legislative power is concerned, be submitted to the vote of a mass convention.

Indeed it may be a question whether this would not of the two be the preferable method.

There would surely be a better opportunity for discussing the merits of the proposed law, and for consultation among the people from the different sections of the state. Besides, history furnishes a precedent somewhat similar in character in the Athenian republic where laws were framed by the senate to be submitted to an assembly of the whole people.

But perhaps a mode of procedure still less objectionable might be suggested. The laws might be passed by the legislature to

take effect or not upon the approval or disapproval of a select number of persons designated in the act, thus creating a power in the state not entirely dissimilar to the old council of revision.

Other methods of relieving the legislature from the responsibility which rests upon its members might be suggested, but perhaps those already suggested, are sufficient. The right to legislate in this manner was placed upon the argument, almost if not entirely upon the assumption that the legislature was authorized to pass conditional laws—thereby assuming that the nature of the condition could not affect the question. If this assumption be true then it necessarily follows that the submission to the vote of a mass convention, to a select body of men, or even to a foreign potentate, may be made the subject of a valid condition.

But why should this method of procedure be confined to the law-making power of the government? Why not extend it to the executive and judicial departments? The functions of government which the latter are called upon to discharge, are no more sacred, no more important, than those devolving upon the legislative departments, and the constitution is no more explicit in defining and limiting their powers and duties.

The governor is vested by the constitution with the pardoning power, and this includes the power to grant in proper cases conditional pardons.

But can it be inferred from this that he may grant a pardon to be valid or void as the people might vote for or against the pardon at the next general election? Would a pardon be valid even that should take effect upon condition that the legislature should approve of it?

The courts of law sometimes make conditional orders and sometimes conditional judgments, but have they the power or could the legislature give them the power to give judgments to take effect or not, as the people of the state or as particular localities might vote upon the merits of the case?

Suppose our new Code, among other reforms should contain a provision that in a given class of cases the courts might pronounce conditional judgments, to be valid or void, for the plaintiff or defendant, as the people at the next general election should determine! There is no restriction in express terms in the con-

stitution upon the power of the legislature in this respect, yet it would be so palpably contrary to its whole scope and meaning, so utterly subversive of the genius and theory of our institutions, that even the sanctity that is thrown around the Code itself would scarcely shield such an innovation upon the present practice from universal condemnation as being in direct conflict with the constitution. And still I am unable to perceive wherein it would differ in principle from the case under consideration. In either case the exercise in this manner of the functions vested in any department of the government would be utterly subversive of the primary principles of a representative government, and would be a fearful stride towards that worst of all despotisms, a consolidated democracy. It appears to me perfectly manifest, therefore, that such legislation is in direct conflict with the constitution.

So far as there is any authority in the books directly upon the question the preponderance is decdedly in favor of the conclusion to which I have come. In this state, our court sitting in the seventh district—two justices against one have held the act in question constitutional. Justice JOHSNON, who gave the prevailing opinion, concluded that the legislature had no power to submit directly to the people the question whether a proposed act should or should not become a law, but he upheld this law on the assumption that the legislature had the right to pass conditional laws, and that by putting this act in that form they were enabled to evade the objection (*Johnson vs. Rich*, 9 *Barb.* 630). With all due deference, it seems to me that the scope and object of the legislature should be regarded rather than the form of the thing, especially when that object is apparent and manifest upon the act itself.

But the court sitting in the third district has held, as I am informed, the act unconstitutional in a case not yet reported.

These cases, one or both, are now pending in the Court of Appeals.

This kind of legislation has been expressly condemned in two cases, directly in point in the highest courts of Pennsylvania and Delaware (Parker vs. Commonwealth, 6 *Burr* 507; Rice vs. Foster, 4 *Harrington*, 479). In the latter state the question was decided by a concurrence of all the judges of the Court of

Bradley agt. Baxter and others.

Appeals, composed of the chancellor and the judges of the highest law court of the state, after argument by the most eminent counsel in the state. The decision by the Supreme Court of Pennsylvania was made by a majority vote. In both cases the several opinions of the judges are characterized by great ability, and exhibit a thorough examination of the fundamental principles of our free institutions, as well as the general principles of political philosophy. I would refer to those opinions as containing the discussion and illustration of many points applicable to this case, which, from the fact that they are there so fully discussed, I have not deemed it necessary to notice here.

It is claimed that the legislature had by subsequent legislation ratified this act before the commencement of this suit. If this act at the time it was passed was void, for the reason that it did not contain an expression of the legislative will upon the subject matter of the act, I do not perceive how an amendment of the act, unless made upon some point necessarily requiring the expression of the legislative will upon the expediency of the act itself, can be held to ratify it.

The legislature in passing the act with a provision to submit the question to a vote of the people, assumed that the legislature as well as the people, were vested with a power which we hold they do not possess. In amending the act, we have the right to suppose that they still labored under the same impression.

They therefore only intended to amend what they supposed to be a valid law of the land and not to take the responsibility of reënacting the law itself. An amendment made under such circumstances can not have the effect to make a void law valid.

And as to the subsequent act, the title of which reads, " An act to submit to the people at the next annual election, the question of the repeal of the act establishing free schools throughout the state," it is so palpably unconstitutional, even within the reasoning of my brother JOHNSON, in Johnson vs. Rich, cited above, that it will scarcely be claimed it could have any ratifying effect upon another unconstitutional law.

The judgment at the special term must, therefore, be affirmed.