| 54 | 317 |
| 121 | 553 |

| 54 | 317 |
| 123 | 879 |

MAYOR AND COUNCIL OF THE CITY OF BRUNSWICK *et al.,* plaintiffs in error, *vs.* N. S. FINNEY *et al.,* defendants in error.

1. An injunction ought not to be disturbed because the bill is not sworn to by the complainant. It is sufficient if it be verified by the oath of a competent witness.

Mayor and Council of the City of Brunswick *et al. vs.* Finney *et al.*

2. Though a bill be defective for want of proper parties, yet if such parties do in fact come in and answer the charges, the defect is cured.

3. When it was required that notice of the closing of tax books should be given by thirty days notice in a newsyaper or other legal notice, and notice was given in a newspaper thirty days before the closing, but was not continued, but full notice for thirty days was given by advertisement posted at the city hall:

*Held*, that this was sufficient legal notice.

4. When a statute requires taxes to be laid specifically for each separate purpose, it is not illegal to assess a tax of a certain per cent. in gross, and then define in detail the per centage for each specific purpose.

5. When a tax was required by a charter to be made payable in *quarterly installments* at such times as the mayor and council should direct, and the charter provided that the fiscal year should commence on the first of January of each year:

*Held*, that a tax being assessed for any year, it was competent for the council to indulge the tax-payers for the first or second quarter, and to make the installments payable in the second or third quarters, so that they did not make any quarterly installment payable *before* it would be due under the charter.

6. The general assembly of 1872 passed an act revising and consolidating the charter of the city of Brunswick, providing that before said act should have force and effect, it should be assented to by a vote of the people of the city:

*Held*, that such legislation is not unconstitutional.

Equity. Parties. Notice. Taxes. Municipal corporations. Constitutional law. Charter. Before Judge HARRIS. Glynn County. At Chambers. January 19th, 1875.

N. S. Finney *et al.* filed a bill against Jacob E. Dart *et al.*, making the following averments: Defendants, assuming to act as mayor and council of the city of Brunswick, passed an ordinance on the 3d day of July, 1874, entitled "An ordinance to provide for the current expenses of the city of Brunswick, the payment of the past due coupons of said city, and the retiring of the city currency." It provided that a tax of one and three-fourths per cent. be levied upon all the property within said city, for the purposes thereinafter set forth, for the year 1874. It then proceeded as follows: "SEC. 2d. *Be it further ordained,* That one-half of one per cent. of the tax above levied be appropriated to the cancellation of the

Mayor and Council of the City of Brunswick *et al. vs.* Finney *et al.*

coupons due by the city previous to the 1st July, 1874; that one-half of one per cent. of the said tax be appropriated to the payment of the current expenses of the municipal government of said city ; and that three-fourths of one per cent. of said tax be appropriated to the retiring of the currency of said city or due bills issued for the retirement of said currency." Section 3d required the treasurer to open his books for tax returns immediately, and close them on the 4th of August, 1874. Section 4th required the treasurer to keep three separate accounts, according to the distribution aforesaid, and authorized him to receive one-half of one per cent. of each tax payer's taxes in past due coupons or legal currency, for the purpose of canceling coupons as aforesaid, and one-half per cent. in approved accounts or legal currency, for defraying the current expenses of the municipal government, and three-fourths per cent. in due bills issued for the redemption of city currency, and forbade him from paying out any portion of the money, except as therein appropriated. Section 5th declared the first quarter of the taxes payable on or before the 10th of August, 1874 ; the second, on or before the 20th August, 1874 ; the third, on or before the 18th September, 1874; and the fourth, on or before the 1st October, 1874. The 6th section required the treasurer to issue executions without delay for the full amount of the taxes due for the year against any defaulter failing to pay promptly either installment as aforesaid.

The last section repealed all conflicting ordinances. This ordinance was approved July 3d, 1874.

On the 10th October, 1874, G. C. Fahm, assuming to act as clerk and treasurer of the city of Brunswick, under an election to said office by said pretended mayor and aldermen, acting collectively as the mayor and council of the city of Brunswick, issued the following notice to the tax-payers :

"NOTICE TO TAX PAYERS.

"The treasurer's books will be finally closed on the 20th instant for the collection of city taxes for the year 1874, and

for all taxes unpaid executions will issue against the property of those failing to settle all taxes due, and be placed in the hands of the marshal for collection.

    (Signed)    "G. C. FAHM, *Treasurer.*
"October 10th."

This notice was published once in the Brunswick Seaport Appeal. Between the 20th October, 1874, and December 5th, 1874, the pretended clerk and treasurer issued tax *fi. fas.* against complainants, which were levied on their property by one B. A. Fahm, assuming to be marshal of the city of Brunswick, under an election by said pretended mayor and council of Brunswick, who advertised said property for sale on the first Tuesday in January, 1875.

All the foregoing acts are void, because they were done under an act to consolidate and amend the several acts incorporating the city of Brunswick, and for other purposes therein mentioned, approved August 27th, 1872, and published in acts of 1872, page 151. The said act is void, because the 59th section provided for its submission to the legal voters of the city of Brunswick for adoption or rejection, and provided that if they rejected it the act should be void. This was an attempt by the legislature to delegate to the voters of Brunswick the power to repeal or to make a law.

Said ordinance is void, because it does not provide for the collection of the city tax in quarterly installments, as required by the charter; and said charter makes the fiscal year commence on the first Monday in January, annually, and no ordinance could have been passed for a quarterly collection of taxes after the first quarter of the fiscal year.

Said executions were null and void because issued before the treasurer had given thirty days notice of the closing of his books, as required by said charter.

The ordinance was further void, because it attempted to levy a tax of one and three-fourths per cent., in violation of the act approved February 28th, 1874, entitled an act to limit and regulate the assessment and collection of taxes by

Mayor and Council of the City of Brunswick *et al. vs.* Finney *et al.*

municipal authorities in this state, except so far as relates to the city of Savannah, published in the acts of 1874, page 109. Complainants prayed for an injunction against said *fi. fas.*

The bill was sworn to by W. F..Stewart, as agent for three of the complainants. The chancellor issued a temporary injunction, with an order to show cause, on the 12th of January, 1875, why the injunction should not be made permanent. The bill was served upon said marshal in person, and upon said mayor and council by leaving a copy with said clerk and treasurer.

The defendants demurred to the bill upon the ground that it contained no equity for relief as against the defendants, because defendants were not proper parties, but the mayor and council of Brunswick were the parties who should have been defendants; because complainants had an adequate remedy at law, and because the bill was argumentative.

For further cause why the injunction should not be perpetuated, an answer was filed, in brief, as follows: These defendants were mayor and council, and said clerk and marshal were elected, said ordinance. passed, said assessment made, and said *fi. fas.* were issued and levied by virtue of said act of 24th August, 1872. Said act is valid and of force, and authorized all the acts aforesaid. Jacob E. Dart is no longer mayor of Brunswick, and W. H. Rainey, C. G. Moore and W. Dart, Jr., no longer aldermen, and are not now assuming to act as such, and have nothing to do with said executions. They say the ordinance is legal, because the charter does not provide that the collection of taxes shall be made quarterly, in point of time, but in quarterly install-ments of amount. Said executions· are not void for want of thirty days' notice of the closing of the treasurer's books, because said notice was published for thirty days before issuing executions, by posting the same at the door of the city hall. Said ordinance is not opposed to said act of February 28th, 1874; and if it is, it is not void, because said act is a general act, and does not change the provisions of said charter, which

is a special act. They further objected that the bill was not sworn to by a competent person, as required by law.

All the averments in the answer were proven by certified extracts from the minutes of said mayor and council, and by affidavits of the assessors, of the clerk and treasurer, and of the marshal.

The injunction was made permanent, and the defendants excepted.

N. J. HAMMOND; STEPHEN C. DeBRUHL, for plaintiffs in error.

GOODYEAR & HARRIS, by brief, for defendants.

McCAY, Judge.

1. There is no express requirement of the law that a bill seeking an injunction shall be sworn to by the plaintiff. The chancellor ought not to grant so harsh a writ unless the *facts* upon which its justice depends are sworn to; but that verification may be by the oath of some other than the plaintiff. Indeed, if the facts be only known by some other person, it is eminently proper the verification should be by him. This is plainly recognized by our act of 1870, Code, section 3211, which treats the sworn allegations of the bill, or the affidavit of some competent person, as sufficient cause on which to base an injunction, even without a hearing. In this case, the whole gravamen of the bill turns on legal questions, matters of fact having but little to do with the controversy.

2. Upon the question of parties, whatever defect there was in the original proceeding is waived by the coming in of the proper parties and their answering the bill, though it is very plain that the mayor and city council could not be enjoined by a proceeding against its old members.

3. We think the notice required by the charter before issuing the executions, was substantially given. By the express words of the charter, a notice in the newspaper is not the only mode—other legal notice will do—and a publication

by posting at the court-house and city hall is a very proper and very public and very usual mode of giving notice of anything that is to be notified to the public.

4. It is sticking very closely in the bark to make a difference between laying one-half per cent. for current expenses, and one and a fourth for paying the public debt, and laying one and three-fourths—one-half being for current expenses and one and a fourth for paying the public debt. Substantially it is the same thing done in both cases. The day has past when an adherence to mere form so slavish as this can find favor in the courts.

5. Much might be said in favor of the idea that the words "quarterly installments" means installments each being one-fourth of the whole tax and nothing more, since the time of the payment of such installments is left with the officers. But we are inclined to think the word quarterly here means not only quarterly as to amount, but quarterly as to time of payment, and that the time left to the mayor, etc., is the time or day in each quarter. But we cannot suppose this means that if the first quarter's tax is not collected in the first quarter, that it is uncollectable. Evidently the intent was to indulge the tax payer, so that he should not be compelled to pay the whole of the tax in the first, second or third quarter. But we can see nothing contrary to this in permitting him to escape paying during the first quarter altogether—indulging him even for that, postponing it for his benefit to the second or third quarter. And just that has been done here. The payments are in quarterly amounts. The tax payer is indulged for the first and second quarter to the third. Then the first, second and third installments are made payable at different times during the third quarter, and the fourth installment is payable in October of the fourth quarter. There is nothing in this onerous on the tax payer. It gives him better terms than the act provides, and he has no right to complain. As to the charge of unequal assessments, it is positively sworn off by the answer. But even without this, it may be said that the charter provides a tri-

bunal to assess, and a court of equity would not interfere on a mere charge of excess. The law makes the assessors the judges. To authorize an interference, something more ought to be charged, such as fraud, corruption, willful partiality, etc. For it is a well settled rule in all such cases, that, for a difference of opinion, a court of equity will not interfere. Something must appear showing conduct abusing the official discretion conferred so as to be *ultra vires*.

6. Whether it is competent for a legislature to pass any law to take effect only upon the assent of the people, is a question upon which the authorities seem to be conflicting. Against the validity of such a law are some New York cases: Thorne *vs.* Craemer, 15 Barb., 112 ; Bradley *vs.* Baxter, *Ibid.*, 122 ; Barty *vs.* Howard, 4 Selden, 483 ; a Pennsylvania case, Parker *vs.* Commonwealth, 6 Barr, 507. There are also some early Iowa cases on the same line, and Mr. Sedgwick, in his work on Stat. & Cons. Law, 163, seems to adopt the principle of these cases as sound law. On the other hand, Judge Cooley, in his able work on Constitutional Limitations, pages 117 to 124, seems to deny the doctrine altogether, and cites in defense of his position Bull *vs.* Reed, 13 Grattan, 78 ; Johnson *vs.* Rich, 9 Barb., 680 ; State *vs.* Parker, 26 Vt., 357 ; State *vs.* Reynolds, 5 Gilm., 1 ; Robison *vs.* Bidwell, 22 Cal., 349 ; State *vs.* Noyes, 10 Foster, (N. H.) ; Bank of Chenango *vs.* Brown, 26 N. Y., 487. We have gone carefully over the authorities referred to on both sides of this important question. The case in Grattan denies the doctrine altogether. It insists that the right to legislate conditionally is a very important and useful right, and that a condition providing that a law shall not take effect until it has been assented to by a vote of the people, is no more than providing any other condition upon which a law shall take effect. To say that a legislative body *must* legislate positively and definitely, and that it may not declare what is its will, provided certain events may occur, would be largely to hamper and restrict the legislative power. Such bodies meet only for a short time during the year, and it would largely lessen their useful dis-

cretion to deny to them the right to enact conditional laws, to go into operation only on certain contingencies. A long list of most important laws, both state and national, is contained in the cases referred to by Mr. Cooley. If such conditional legislation is important for the public good, it seems difficult to sustain a position that legislation, conditioned to take effect provided the people interested in the law shall, by a formal vote, declare such a law to be desirable, is a delegation of legislative power. Take, for instance, our act of November, 1861, suspending the statute of limitations, to take effect if the banks suspended. Was that a delegation of legislative power to the banks? And is it any more a delegation of legislative power to enact a law to express the legislative will as to a rule of action, but to add that this will shall not take effect as law until a certain vote of assent is had by the people? But the cases in which the right of the legislature to pass a law which is conditioned to take effect only on the assent of the people is denied, are, for the most part, cases of *general* laws. The cases in New York are qualified thus by later cases: In 18th, 23d and 26th N. Y., it is expressly ruled that the legislature may make a *local* law, to take effect only by a vote of the people interested. And so the case in 6 Barr is by the same judge, in 8 Barr, 391, declared not to cover any laws except general laws affecting the political or social rights of the people; and in 10 Barr, 214, the same distinction is taken. Without committing ourselves upon the general principle, we think this distinction a sound one. Local or private laws are, as Blackstone says, not strictly laws, but exceptions to laws: 1 Black., 86. Judges did not at common law notice them judicially—they were required to be pleaded as matter of private right. In the history of legislation, such acts are, in fact, always passed on the assent of the people; ordinarily, it is true, this assent is given by an application, and if the law be passed the application is presumed. But where upon the face of the act the legislature indicates that it is not satisfied that the people desire this excep-

tion to the general law, it seems eminently proper that the act be declared not ·final until it is assented to.   In acts strictly private, our constitution, article I., section 26, requires the written assent of the parties at interest, and·there are various other provisions of the constitution, as that referring to the abolition of counties, article III., section 5, paragraph 2, and that in relation to internal improvements by cities, article III., section 6, paragraph 4, which indicate that the framers of the constitution recognized the propriety, in cases of local legislation, of getting the formal assent of the people interested to the proposed exception to the general law of the state.   The case of the acceptance or non-acceptance of a charter, stands ·on a still stronger footing.   I ·do not think any of the cases have gone so far as to doubt the legality of a condition of assent to a charter.   At common law, a charter—even a municipal one—was invalid until accepted : *King vs. Amery,* 1 *T. R.,* 575.   And though, perhaps, the legislature might force a charter upon a people, yet it is the common understanding, even among lawyers, that a mere grant of corporate powers is nothing until it be accepted by acting under it.   So, too, it is understood, that the people may, if they choose, fail to keep up the organization, and thus abandon the charter.   It would, therefore, it seems to·us, appear absurd to say that the general assembly may not provide for an express assent by a vote, when, in fact, the validity of the charter turns, as a general rule, on an implied consent.   It may be also remarked, that notwithstanding the universal recognition of the rule that the legislative power cannot be delegated, the immemorial usage of all the states has been, by the creation of municipal corporations, and the organization of counties, townships and districts, to delegate to, local organizations · many local matters which the legislature might in its discretion itself provide for.   Even so grave a matter as taxation has always, in this state, even without special constitutional provisions, been delegated to cities and towns and county organizations, and if it be competent to delegate such powers directly to city or town councils, or to county courts, much more

may the legislature pass laws in reference to local matters, subject to the consent of the localities interested.

Judgment reversed.