#### FOR THE

## COUNTY OF WASHINGTON.

### APRIL TERM, 1849.

---

#### PRESENT.

Hon. ISAAC F. REDFIELD, ⎫
Hon. DANIEL KELLOGG, ⎬ Assistant Judges.
Hon. LUKE P. POLAND, ⎭

---

### CARLOS BANCROFT AND GEORGE P. RIKER v. JULIEN DUMAS.

The statutes of this State, enacted October 31, 1844, and November 3, 1846, relating to licensing innkeepers and retailers, are not unconstitutional.

It is no objection to the validity of the statute of 1844, that by its provisions commissioners in each county were to be elected by the people each year, and were to have the sole power of granting licenses, under the statute, and that a penalty was imposed upon any person, who should sell without a license. That the commissioners elected in the different counties might entertain different views in relation to the expediency of granting licenses generally, and thereby cause the statute to operate differently in different parts of the state, does not affect the validity of the statute.

Neither is it any objection to the validity of the statute of 1846, that by its provisions the power to grant licenses is conferred upon the assistant judges of the several county courts, and that the freemen of the state are to meet in town meeting each year and vote upon the subject of licenses, and that, if a majority

Bancroft *v.* Dumas.

of all the votes be in favor of licensing, the judges may grant licenses, but otherwise not, and that a penalty is imposed upon any person, who shall sell without license. The statute is complete in itself, as a law, without the act of the freemen, and it is no objection, that it is made to depend upon the expressed will of the people, whether it shall operate as an authority for granting licenses, or as a prohibition.

When a statute imposes a penalty for doing an act, it impliedly prohibits the act and renders it illegal, and no suit can be based upon such illegal act.

No recovery can be had for spirituous liquors, sold in this state, while the statute of 1844 was in force, or since the enactment of the statute of 1846, by one not duly licensed to sell them.

If a debtor make a payment upon an account, and do not direct any application of it to be made, the right of the creditor to make the application is limited to an application upon such demands, as are legal, valid claims, the payment of which can be enforced,—provided the creditor hold such demands.

Book Account. Judgment to account was rendered, and an auditor was appointed, who reported the facts as follows.

The amount of the debit side of the plaintiff's account, as allowed, was $ 497,24, towards which the defendant had paid $ 266,70, leaving a balance due to the plaintiffs of $ 230,54. But of the plaintiffs' account $ 119,32 accrued for spirituous liquors, sold by the plaintiffs to the defendant between March 6, 1846, and April 9, 1847, during which time the plaintiffs had no license to sell spirituous liquors, as required by the statutes then in force. The auditor submitted to the court the question as to the plaintiffs' right to recover therefor.

The county court, November Term, 1847,—Redfield, J., presiding,—disallowed the plaintiffs' charges for spirituous liquors, and rendered judgment for the plaintiffs for the residue of the balance due thereon, being $ 111,22. Exceptions by plaintiffs.

*Spalding & Dean* for plaintiffs.

1. The statutes of this state of 1844 and 1846, in relation to the selling of spirituous liquors, are unconstitutional and void. It has recently been decided by the supreme court of Pennsylvania, in 1847, in the case of *Parker* v. *Commonwealth*, [10 Law Rep. 375,] that a statute, authorizing the citizens of certain counties to decide,

58

by ballot, whether intoxicating drinks should be sold in those counties, was wholly void. The license law of Vermont, enacted in 1846, and the statute of Pennsylvania, enacted in 1845, upon which the foregoing decision was made, are substantially the same; and the constitutions of the two states are similar. No power, but the legislative body, can enact laws; and the legislature are bound to exercise the power, thus conferred upon them, in the mode prescribed by the constitution; and any law, made in any other mode, is unconstitutional and void. The people have no more constitutional right to decide, by ballot, that an act of the legislature shall go into operation as a law, than they have to decide by ballot, that an act of the legislature shall be suspended and become inoperative. Constitution, Part I, art. 5–7, 9, 15; Part II, art. 9, 42. The representative cannot transfer his duty, even to the whole people; much less can he to a portion of the people. Therefore the statute of 1846, authorizing the people of this state to decide by ballot, whether spirituous liquors shall be sold in the state, is wholly void. And so, also, the statute of 1844, which authorizes the people of the several counties in this state to decide by ballot, whether commissioners should be appointed, who might, or might not, as they chose, grant licenses to sell spirituous liquors,—thereby leaving it so, that, while one county could obtain licenses, another could not, as the ballots of the people of the different counties might happen to decide the question, and which, in effect, was putting it into the hands of the people to say, by their ballots, that there should be *no* licenses granted throughout the entire state, and thereby absolutely to *prohibit* the sale of spirituous liquors in the state,—was equally unconstitutional and void.

2. The statutes of 1844 and 1846, if constitutional, are mere *revenue regulations*, inflicting a penalty personally on the seller, for his neglect to take out a license, in order more effectually to secure the receipt of the revenue, but not intending to prohibit a contract for the sale of such goods. In the large class of cases, in which penalties are inflicted for not complying with statute regulations there is to be observed, throughout, a clear and broad distinction, between those cases, where no licenses can be granted, and where the penalty is inflicted with the evident intention of prohibiting absolutely the traffic in the articles forbidden, and those cases where a license

may be granted and a penalty is inflicted for a *neglect* to take out a license, as prescribed by statute. In respect to the first class, that is, where *no license* can be granted, the decisions have been uniform for the last forty years, and the reason of them is apparent. Chit. on Cont. (Ed. of 1844,) 422, 695. *Langton* v. *Hughes*, 1 M. & S. 596. *Law* v. *Hodson*, 11 East 300. *Foster* v. *Taylor*, 3 Nev. & M. 244. *Little* v. *Poole*, 9 B. & C. 192. *Tyson* v. *Thomas*, McClel. & Y. 119. *Mitchell* v. *Smith*, 4 Dal. 269. 1 Binn. 110. *Hunt* v. *Knickerbacker*, 5 Johns. 327. *Wheeler* v. *Russell*, 17 Mass. 258. *Coombs* v. *Emery*, 2 Shepl. 404. *Lyon* v. *Strong*, 6 Vt. 219. *Elkins* v. *Parkhurst*, 17 Vt. 105. Rev. St. c. 68. Ib. 447, 449. In respect to the second class of cases above named, that is, where licenses may be granted, and penalties are imposed for neglect to take out a license, the decisions have been equally uniform. The case of *Johnson* v. *Hudson*, 11 East 180, is exactly similar in principle to the case at bar, the property sold, in that case, being tobacco. Chit. on Cont. 420. *Brown et al.* v. *Duncan*, 21 E. C. L. 29. *Wetherell* v. *Jones*, 23 E. C. L. 58. *Hodgson* v. *Temple*, 1 E. C. L. 67. *Brooker* v. *Wood*, 27 E. C. L. 264.

The supreme court of South Carolina have decided, that " an account principally for spiritous liquors may be recovered, although the plaintiff had no license to sell." *Herlock* v. *Riser*, 1 M'Cord 481. Chit. on Cont. 426, n. 1.

The credits should be applied generally, to all the plaintiffs' account. *Briggs* v. *Williams et al.*, 2 Vt. 283. *Robinson et al.* v. *Doolittle et al.*, 12 Vt. 246.

*J. A. Vail* and *B. H. Adams* for defendant.

The sales of liquor, made by the plaintiffs without a license therefor, were violations of the statute laws of this state, and subjected the plaintiffs to a penalty for each act of sale. Acts of 1844, p. 17, § 14. Acts of 1846, p. 19, § 2. Where a contract grows immediately out of and is connected with an illegal or an immoral act, a court of justice will not lend its aid to enforce it. And the law is the same, if the statute does not expressly declare the contract to be void, but imposes a penalty for its violation. *Toler* v. *Armstrong*, 4 Wash. C. C. R. 298. 11 Wheat. 258. *Mitchell* v. *Smith*, 1 Binn. 118. *Roby* v. *West*, 4 N. H. 285. *Pray* v. *Bur-*

*bank*, 10 Ib. 377.   *Lyon* v. *Strong*, 6 Vt. 219.   *Elkins* v. *Park-hurst*, 17 Ib. 105.   *Hunt et al.* v. *Knickerbacker*, 5 Johns. 327. *Bank of Springfield* v. *Merrick et al.*, 14 Mass. 322.   *Wheeler* v. *Russell*, 17 Mass. 258.

All acts of the legislature are presumed to be constitutional; and the court ought never to pronounce a statute to be otherwise, unless in a case where the point is free from doubt.   The constitution of this state gives to the legislature the right to regulate the internal police of the state, and to pass all laws necessary to the good order and government of the same.   It also declares, that "laws for the encouragement of virtue and prevention of vice and immorality ought to be constantly kept in force and duly executed."   Part II., sec. 41.   The legislature, in obedience to the injunctions of the constitution, enacted these statutes, to prevent, or check, a traffic, which is known to have a direct tendency to promote intemperance and impoverish the state, to disturb the public peace and greatly to multiply evils and crimes.

In Maine a similar statute, under a constitution substantially like ours, was decided to be constitutional.   *Lunt's Case*, 6 Greenl. R. 412.

The statutes in question, so far as this case is concerned, were completed by the legislature, and required no action of the people to give them validity.   The case of *Parker* v. *Commonwealth*, decided recently in Pennsylvania, is not an authority for the plaintiffs on this point.

The opinion of the court was delivered by

KELLOGG, J.   This is an action of book account, which was submitted to an auditor, who returned a special report, upon which the county court rendered judgment for the plaintiffs,—disallowing, however, a portion of their account.   It appears by the report, that a portion of the plaintiffs' account consisted of charges for ardent spirits, sold to the defendant between the sixth of March, 1846, and the ninth day of April, 1847, amounting to the sum of $119,32, during which time the plaintiffs had no license authorizing the sale of spirituous liquors, as provided by the license laws of 1844 and 1846.   This part of the account was disallowed by the county court.

The decision of the court below is resisted upon two grounds;—
1. That the laws of 1844 and 1846, relating to licenses, are unconstitutional and void. 2. That if the laws are constitutional and valid, the sale of the liquors, without a license, would only subject the plaintiffs to the penalty imposed by the statute, and would constitute no objection to their recovery.

If the acts of the legislature, which are now under consideration, are clearly repugnant to the constitution, it becomes the duty of the court, however delicate the task, to pronounce them void. But, in order to justify the court in such an adjudication, the case must be clear and free from doubt. The opposition between the law and the constitution should be so clear, as to produce a settled conviction of their incompatibility with each other. Nothing short of this will warrant the court in declaring, that the legislature has transcended its constitutional power.

The statute of 1844 provides for the election of commissioners in the several counties, who are authorized to grant licenses to such suitable persons, as they shall think proper, to keep inns, or taverns, and to retail spirituous liquors, in the several towns in their respective counties; and it imposes a penalty upon such as shall sell without a license therefor. It is difficult to perceive any valid objection to this law. It has, indeed, been said, that the law had not an uniform operation throughout the state; that while in some counties the commissioners were liberal in granting licenses, in others they wholly refused them. If such were found to be the operation of the law, it is conceived, it would rather constitute an objection to the *administration* of the law, than to the law itself; for the state contemplates no such diversity. The commissioners of the several counties might entertain different views in relation to the propriety of licensing certain persons as innkeepers, or granting any licenses at all, and this would necessarily lead to a want of uniformity in the administration of the law. The same objection might be urged, and with equal propriety, to the former license laws, which authorized the selectmen and civil authority of the several towns to approbate suitable persons to keep taverns, and restricted the county courts to the licensing of such only as were approbated. This necessarily produced some inequality and want of uniformity in the administration of the law; and yet this was never supposed to render the law

invalid. The license law of 1844 was general in its character, providing an uniform system in relation to the licensing of inn-keepers and retailers throughout the state. The subject was unquestionably within the constitutional power of the legislature, and the fact, that the law did not operate alike in all parts of the state, does not, in the judgment of the court, impair its validity. Nor are we aware of any sound objection, which can be urged to the constitutionality of the statute.

The unrestricted traffic in intoxicating liquors has been found, by sad experience, to produce the most demoralizing influence upon society, and hence the public solicitude upon the subject, and the interference of the legislature from time to time, by the enactment of laws regulating and restraining the traffic. The statute of 1846 was passed with the view of conforming the law upon the subject of licenses to what was supposed to be the wishes of the people. The statute provides, that the sense of the freemen shall be taken annually upon the subject, and if a majority shall vote *no license*, then no licenses are to be granted during the year ; and if a majority shall vote *license*, in that event the several county courts are authorized to grant licenses.

It is objected to the validity of this law, that its vitality is made to depend upon the will of the people, expressed at the ballot box, and hence it is urged, that it is not a law enacted by the legislature. Is the law subject to this objection ? It has all the forms of a law, and was enacted by the legislative department of the government ; but whether it shall be a prohibition to, or an authority for, the granting of licenses is made to depend upon the expressed will of the people. Can this feature of the statute invalidate the law ? Is a law to be adjudged invalid, because it is conformable to the public will ? It is in accordance with the theory of our government, that *all our laws* should be made in conformity to the wishes of the people. Surely, then, it can be no objection to a law, that it is approved by the people. We believe it has never been doubted, that it is competent for the legislature to constitute some tribunal, or body of men, to designate proper persons for inn-keepers and retailers of ardent spirits. Such was the character of *all our* early laws relating to licensing of inn-keepers by authorizing the selectmen and civil authority to approbate suitable persons, and restricting the county

Bancroft *v.* Dumas.

courts to the licensing of such as should be approbated; and we are not aware, that the constitutionality of these laws was ever questioned. And at one period, during the continuance of the license law of 1838, the power of determining whether licenses should be granted was vested in the selectmen and civil authority of the several towns. If the legislature could legally and constitutionally submit the question, whether licenses should be granted, to the determination of a *portion* of the people, could they not, with equal if not greater propriety, submit it to the decision of the *whole* people?

The case of *Rice* v. *Foster*, decided by the supreme court of Delaware, is relied upon as an authority to establish the unconstitutionality of the statute of 1846. The brief report of the case published in the Law Journal, to which we have been referred, does not show, in terms, what the statute was, which was adjuged to be unconstitutional. Enough, however, appears in the brief extracts from the opinion of the court, published in the Journal, to satisfy us, that it differs materially from the license law of 1846. The court say of the Delaware law, " The legislature are invested with no power to pass an act, which is not a law in itself, when passed, and has no force or authority as such, and is not to become or be a law, until it shall have been created and established by the will and act of some other persons, or body, by whose will, also, existing laws are to be repealed, or altered, or supplied. The act of the 19th of February, 1847, is of this character." Such is the description of the Delaware statute, as given by the court; and are those remarks applicable to our statute of 1846? Was not our statute a law in itself, when passed by the legislature? Had it not the force and authority of law, independent of any action of the people? Can it be said, that, before it receives such force, it is to be created and established by the people? We are entirely satisfied, that the law of 1846 is subject to none of these objections. The law was complete in itself, when passed by the legislature, and did not require the creative power of the people, or of any body, to give it vitality, or force. The second section of the statute imposed a penalty upon any person, who should deal in the selling of distilled spirituous liquors without a license therefor, as provided in the statute. This amounts to an implied prohibition of such sale, without a license. *Roby* v. *West*, 4 N. H. 285.

If the people had never voted upon the question, as provided by the statute, the only consequence would have been, that licenses could not have been obtained, the statute would have remained in force, and consequently those who engaged in the traffic would incur the penalty imposed by the statute. The case· of *Parker* v. *The Commonwealth of Pennsylvania*, 6 Barr, has been urged as an authority decisive of this question. In that case the Supreme Court of Pennsylvania held a law, relating to the sale of ardent spirits in some two or three counties, to be unconstitutional. The decision of the court is based upon the ground, " that the law depended, for its validity and efficacy within the counties named, upon the popular vote of certain designated districts in those counties,—that without this popular expression, the act was inert. Possessing no innate force, it remained a dead letter, until breathed into activity by the people. Until then it *prohibits no act, creates no offence, fixes no penalty*,—that if the people should vote negatively upon the question submitted to them, the act, as a statute, had no existence,—it was not to be a law within the district, where such vote was cast." Such is declared to be the character of the Pennsylvania statute ; and can the objections, which were urged against that law, be justly applied to our law ? We think not. The Pennsylvania law depended, for its life, force and existence *as a law*, upon the vote of the people. Whereas our statute of 1846 was complete as a law, when it came from the hands of the legislature, and did not depend, for its force and efficacy, upon the subsequent action of the people. The distinction between the two statutes is very obvious and material.

Laws are often passed, and, by the terms of the statute, made to take effect upon the happening of some ·event, which is expected to occur ; and we are not aware, that such laws, for that reason, have been regarded as invalid. So it has not been unusual for the legislature to pass laws altering the lines of towns, with a proviso, that the same should not take effect, until the several towns in interest should by vote signify their assent to the same. And we are not aware, that such a law has ever been adjudged invalid. The assent of the towns in interest, to the alteration of their jurisdictional lines, is not necessary to the exercise of that power by the legislature. Towns are *quasi* corporations, created for public purposes, and over

which the legislature have power to legislate, as the public interest may require.

The result of our deliberation upon this part of the case is, that the license laws of 1844 and 1846 are not repugnant to the constitution, but are binding and obligatory upon the people.

The license laws being valid and obligatory, the question arises, how are contracts, made in contravention of those laws, to be regarded?

The statute aforesaid subjects any person, who shall, without a license therefor, deal in the selling of distilled spirituous liquors, to a penalty, to be paid to the county treasurer for the use of the county. The sale of the spirits charged in the plaintiffs' account, without license, being in violation of the license laws, was an illegal act, and the contract an illegal one, which a court of justice will never lend its aid to enforce. It was so held in *Armstrong* v. *Toler*, 11 Wheat. 258. And it has long been settled law, that a promise, made in consideration of an act which is forbidden by law, is void. It was so held in *Craig* v. *The State of Missouri*, 4 Peters 426, and in *Roby* v. *West*, 4 N. H. 285, and in *Pray* v. *Burbank*, 10 Ib. 377, and in numerous other cases. And it is held in the cases above cited, that, where a statute imposes a penalty for the doing of an act, the law, by *implication*, prohibits the act and makes it illegal; and it is at this day uniformly held, that no suit can be based upon such illegal act.

It is objected, that the court below erred, in not applying the payments, made by the defendant, to the plaintiffs' account generally. The county court applied the payments to that portion of the account, which was legal and could be enforced against the defendant; and we think the court was right in making such application, it not appearing, that the defendant gave any directions as to the application, at the time the payments were made. The principle is well settled, that a party making a payment to his creditor has the right to direct its application at the time of payment. If the debtor omit to direct how it shall be applied, the creditor may make the application. This right of the creditor, however, is understood to be limited to an application upon such demands, as are legal, valid claims, the payment of which can be enforced against the party, provided the creditor hold such demands. The payments will be

59

presumed to have been intended to be applied upon such demands, in the absence of proof to the contrary. The application, therefore, was correctly made by the court below.

The result is, that the judgment of the county court must be affirmed.