STATE *v.* JOHN PARKER.

*Legislation. Submission of Laws to the People.*

The Maine Liquor Law of Vermont was passed to go into effect on the second Tuesday of March, 1853, with a proviso, that a vote should be taken in relation to the time when the act should go into operation, and if a majority of the votes cast should be "no," then the act should go into operation in December, 1853— *Held,* constitutional.

THIS was an Information in one count, filed by the State's attorney under the license or liquor law passed at the October session of the legislature in 1852, and approved November 23, 1852.

Plea, not guilty and trial by jury.

The evidence tended to prove four distinct offences.

The counsel for the respondent, requested the court to charge the jury that under the information they could not find the respondent guilty of more than one offence.

The court,—COLLAMER, J., presiding,—declined so to charge, and did charge the jury that the testimony tended to prove four distinct offences, and if they believed the witnesses, they would find the respondent guilty, and would say of how many offences he was guilty.

The jury returned a verdict of guilty, and that four offences were proved.

After verdict, and before judgment in said cause, the respondent moved an arrest of judgment for this, that the said information is insufficient in law to warrant a conviction. The court overruled the motion. To the charge and decision of the court, the respondent excepted.

*J. S. Marcy* for respondent.

I. This prosecution is based upon the "Liquor Law" of 1852, § 5.

The sale is alleged on one day only, and but one sale was proved on any one day. Therefore the court should have charged as requested. The form shows that offences committed on *different days* cannot be shown under one single count, though various violations on the same day may be.

Had the respondent pleaded guilty in this case, of what would he have pleaded guilty, and what would have been his sentence?

2. The motion in arrest should have prevailed, 1st. because two distinct, dissimilar and substantive offences are set forth in one count, to wit, *selling* and *furnishing*. The statute in the form distinguishes these as two offences. *See* form.

2dly. The act is unconstitutional in many of its provisions, and the whole act is thereby vitiated. Article 10, of part first of the state constitution ordains, "That in all prosecutions for criminal offences a person hath a right to demand the cause and nature of his accusation."

Sec. 18, of this liquor act, which imposes the fine for this offence

and prescribes the forms &c., presumptuously and *expressly* assumes to " set at naught" this provision of the constitution.

*Again,* this section of the act gives an *express license* to the government attorney to suppress and conceal from the respondent all knowledge of the " nature and cause" of the offence, he intends to convict him of until such knowledge, for the first time bursts upon him *through the evidence on trial ;* and it contains also a mandate to the court to " adjudge" and " sentence" upon a conviction brought about in this way, and to impose fines, forfeitures and penalties, far more severe than that which is prescribed for the offence which, and which only, is set forth *in the information.*

3. Passing over many other objections which go to the validity of the law, we come to section 27, which reads as follows : " The " foregoing provisions of this act shall take effect on the second " Tuesday of March next; provided, that if a majority of the bal- " lots to be cast as herein after provided, shall be " no," then this " act shall take effect on the first Monday' of Dec., A. D. 1853."

That this section of the act is repugnant to the constitution there cannot be a doubt, and it is equally clear that its unconstitutionality infects the whole act.

The constitution, in the 3d Article of amendments, provides that, " The supreme legislative power of this state shall hereafter be " exercised by a senate and the house of representatives, which " shall be styled The General Assembly of the State of Vermont." *See* also U. S. Constitution.

By thus delegating the legislative power to said assembly, the people necessarily divested themselves of it; else there must be more than one legislature; and the body to which it was thus assigned has *no where* the authority given to remit to the people the exercise of it. *Bradley* v. *Baxter,* American Law Register, Sept. No. 1853, Vol. 1 No. XI, page 658. *Bancroft & Riker* v. *Dumas,* 21 Vt. 456 and authorities there cited. -

The fixing of the time at which an act shall take effect is as properly and exclusively within the province of legislative power as is the enactment of any other provision of a law, and the expediency of enacting any part or the whole of this law would as legitimately have been submitted to the decision of the people as would this section, which prescribes the time for the commencement of the operation of the law.

This time was not definitely fixed by the legislature, but that body referred it to the people to determine whether the *act* should be law *for and during the time intervening from the second Tuesday of March, to the first Monday of December,* 1853.

If the vote of the people may decide whether an act shall be law for any time, why not for all future time, or as is usual, for such time as the law shall remain unrepealed?

It is admitted that conditional laws may be enacted, to take effect only on the happening of some contingent or uncertain event; but such event or circumstance must be some way connected with, or related to the subject matter on which the law is intended to operate.

The law was incomplete in itself, when it left the hands of the legislature, for the reasons above assigned.

*C. French* for State.

1. The charge of the court below is fully sustained by the decision of this court in the case of *Howard* on *Habeas Corpus,* in Addison county, the present circuit; in which the court are reported to have decided, "That though the complaint or information for a violation of the license law of 1852, contain but one count, five distinct offences could be proved and a fine imposed for each."

Besides, the Act § 18, provides, "That for every distinct act of selling &c., the court shall impose a fine for each offence."

The license law of 1846, has received a similar construction.— *State* v. *Smith,* 22 Vt. 74.

2. Another ground for arresting the judgment, as would seem from the exceptions, is, "That the information is insufficient in law to warrant a conviction." How much the respondent's counsel means by this indefinite objection is not readily perceived, no particular defect being named.

If by it is meant the law is unconstitutional, I apprehend it is now quite too late for this objection to prevail. This question is ably discussed and decided in the case of *Bancroft et al.* v. *Dumas,* 21 Vt. 456. Also in 22 Vt. above cited. And this court last year in this county, as I insist, decided this point. *Powers'* case, *Habeas Corpus.*

As well might the court hold all prohibitory laws unconstitutional; such for example, as the law against *gaming, lotteries, horse*

*racing*, &c. It is not necessary to regard the violations of the license law of our state, a crime technically, *mala in se*, but a thing prohibited by our statute, and though its violation may become a *crime* under certain circumstances, it is or may not be so regarded indiscriminately; a sale or furnishing may be a technical breach of the law, though no moral wrong was intended or even committed; such cases are only rare exceptions to the most general and obvious result of a violation of this as of other prohibitory laws; and whether *mala prohibita* simply, or *mala in se*, each are to be construed alike, that is, each a breach of duty, and punished by fine or otherwise.

The opinion of the court was delivered by

REDFIELD, Ch. J. This was an indictment for selling and giving away spiritous liquors, contrary to the statute of 1852. One ground of exception to the conviction, was the unconstitutionality of the law of 1852, by reason of its being submitted to the people at what time the law should come in force. It was provided, in the statute, that it should come in force on the second Tuesday of March, 1853; with a proviso, that the meetings of the freemen of the state should be holden on the second Tuesday of February, 1853, to vote upon "Their judgment and choice in regard to this act," and "if a majority of the ballots cast shall be "no," then this act shall take effect in December, 1853." The vote was "yes," and this offense occurred before December, 1853.

The subject of the legality of such enactments has been somewhat discussed, in this state, and in many of the other states. In *Bancroft et al.* v. *Dumas*, 21 Vt. 456, the license law of 1846, was under consideration. By that law it was to be annually submitted to the vote of the freemen, whether licenses should be granted, or not. This was, in effect, submitting quite as much to the discretion of the people as in the case before the court, but in a somewhat different form. So that the case is not altogether decisive, perhaps, of the one before us.

The decisions in the other states, which have come to our notice, are, most of them, quite aside of the direct question. The statute in the case of *Rice* v. *Foster*, 4 ~~Harrison~~ 479, seems to have been a mere proposition to the people, to pass such a law, and as such, certainly differs, in form at least, from this statute. *Parker* v. *The*

State *v.* Parker.

*Commonwealth of Penn.*, 6 Barr. 507, is not the case of a general law, but only an attempt to enforce an edict, or decree, so to speak, in a certain district, by the vote of the people of the district. The fact that this was not a general *law*, or, indeed, properly an act of legislation, was probably sufficient reason for disregarding it. And it is understood that the general question of the legality of statutes, made dependent upon the contingency of .a popular vote, was ruled in favor of the statute, in a subsequent case, in the same state. *Commonwealth* v. *Williams*, 11 Penn. 61. See also 8 Barb. 391. 9 Barb. 685. 10 Barb. 214. 20 Ohio App. 1. *C. W. & Y. R. R.* v. *Clinton Co.*, 1 Ohio N. S. 77. Some or all of which, to *some extent*, countenance such statutes. The case of *The People* v. *Collins*, in the State of Michigan, in regard to their license laws, is where the court were equally divided upon the main question, and of course is not authority, either way. The case of *Bartow* v. *Himrod*, in the New York Court of Appeals, in regard to their school law, is a clear, unqualified decision, in July, 1853, against such a law, when its entire force is *made dependent* upon the vote of the people at large. Many of the Supreme courts of that state had, upon consideration and argument, held otherwise. The comparative force of these determinations would, doubtless, be different, out of that state, from what it is there. We have, then, as far as I know, the decision, in Delaware and New York, against such statutes, and the other cases referred to, more or less countenancing them, and the court equally divided in the state of Michigan. So that there is no considerable preponderance of authority either way. We must, then, look at the matter upon principle.

In this state, the constitution vests the legislative power in the general assembly, consisting of the house of representatives and the senate; and if the mode of proceeding under consideration is equivalent to giving legislative power to the people at large, it is, no doubt, in conflict with the constitution. But it is not very obvious, to us, why this should be so regarded, unless it is done as matter of argument, and to justify a foregone conclusion, which is not one of the legitimate elements of a judicial determination, more than it is of a legislative act, that it shall have the sanction of the people. But the law of 1852 did, not, even in form, depend upon the vote of the people for its coming in force. The statute, in terms, was made to come in force just when it did, on the second

State *v.* Parker.

Tuesday of March, 1853—and if there had been no meetings of the freemen called, or no vote had been taken, the statute would still have become a law just when it did. The only thing made contingent and conditional in the statute, was, in one single event, the operation of the law should be suspended until after the next session of the legislature. It may be said, this difference is not much. I know that very well. But it is as much as that between a condition precedent, and subsequent; and this, in the case of an illegal condition, as it is claimed this was, is quite important. In the former case, the contract or act is rendered void, and in the latter, the condition is only avoided, and the contract or act remains in force. And we do not see, but, upon sound reasoning and good logic, the result must be the same, in regard to statutes. We think it must, and should be. The condition or proviso was only for suspending the operation of the statute : and if the legislature had no right to annex any such condition, then the statute will not be affected by it. It might have been wholly disregarded by the people, and the effect must have been the same—the law would have come in force on the second Tuesday in March. And did the taking a vote (which was in the affirmative besure, but which, if it had been in the negative, was, it is claimed, of no force, and should consequently have been disregarded,) make the legal state of the enactment any different? We think not. And thus the form of enacting this statute seems to steer quite clear of the main argument, upon which all the cases have gone, where similar statutes have been held invalid. And, in regard to the statute of 1852, it cannot, with any show of fairness, be said the legislature did not enact the law, and fully pass upon all questions of constitutionality or expediency involved in the subject. And it is admitted on all hands that the legislature may enact laws, the operation or suspension of which shall be made to depend upon a contingency. This could not be questioned, with any show of reason or sound logic. It has been practiced in all free states for hundreds of years, and no one has been lynx-eyed enough to discover, or certainly bold enough to declare, that such legislation was, on that account, void or irregular. And it is, in my judgment, a singular fact, that this remarkable discovery should first be made in the free representative democracies of America; and in regard to taking the sense of these same people, upon the expediency of legislation,

where the legislators are confessedly the mere agents and instruments of the people, to express their sovereign and superior will, to save the necessity of assembling the people in mass; and when, from the very nature of the case, the representative is, in honor and good faith, bound to conform his action to the will and desire of his constituents.

Does any one seriously doubt the perfect propriety of the legislature, upon questions of general policy, affecting equally the whole state, acting upon the known will of the state, where that is known? We suppose not. And if the sessions of the legislature were long enough, this might be ascertained during the session—as it is to a considerable extent, sometimes—by petitions, and legislation made to conform to such informally expressed will. But if the sessions are too short, and a more formal expression of the will of the people is desired, it amounts to the same thing practically, to provide that the law shall not come into full operation until the people have had an opportunity to say whether they are prepared to conform to the required change. And in regard to these great moral, social, and economical reforms, can it be doubted that the question of the preparation of the public mind to sustain them, firmly and quietly, lies at the very foundation of all hopeful legislation on the subject? And is this not precisely what American legislatures both state and national have always, in effect, although not in form, been accustomed to do? The legislatures have the power to alter county and town lines, and the places of holding courts. But legislation upon these subjects is made to conform, as far as practicable, to the supposed wishes of those interested; and numerous statutes upon these important subjects, whose binding force has never been questioned, have, in terms, been made to depend for their whole force and vitality upon the future contingency of the expressed and recorded corporate vote of those interested. Congress passes laws, almost every session, whose operation is made contingent upon the revenue laws of foreign states, or their navigation laws or regulations, and upon a hundred other uncertanties, more or less affected by the will or agency of voluntary beings or communities; and in most of these cases the suspension or operation of the enactment depends ultimately, *perhaps*, upon the mere will and agency of our executive government; and of the perfect regularity and constitutionality of such enactments no question

State *v.* Parker.

was ever made. Numerous other instances may be found where statutes have been made dependent upon future contingencies, not only for the time of their coming in force, but for their very vitality; and no question of their validity has ever been made upon that ground. This is all recognized as sound law and established precedent by those courts and by those judges who have attempted to argue that a law, made dependent upon a popular vote, was different in principle from one dependent upon other contingencies. But all such attempts seem to me altogether illusory, and, to some extent, captious, not to say frivolous.

If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, it makes no essential difference what is the nature of the contingency, so it be an equal and a fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one. And to us the contingency upon which the present statute was to be suspended, until another legislature should meet and have an opportunity of reconsidering it, was not only proper and legal, and just and moral, but highly commendable and creditable to the legislature who passed the statute; for, at the very threshold of inquiry into the expediency of such a law, lies the other and more important inquiry, are the people prepared for such a law? Can it be successfully enforced? These questions being answered in the affirmative, he must be a bold man who would even vote against the law; and something more must he be who would, after it had been passed with that assurance, be willing to embarrass its operation or rejoice at its defeat.

After a full examination of the arguments by which it is attempted to be maintained, that statutes made dependent upon such contingencies are not valid laws, and a good deal of study and reflection, I must declare, that I am fully convinced—although at first, without much examination, somewhat inclined to the same opinion, that the opinion is the result of false analogies, and so founded upon a latent fallacy. It seems to me that the distinction attempted between the contingency of a popular vote and other future uncertainties, is without all just foundation in sound policy or sound reasoning, and that it has too often been made more from necessity than choice—rather to escape from an overwhelming analogy, than

from any obvious difference in principle in the two classes of cases; for, as has been mentioned, one may find any number of cases, in the legislation of congress, where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts, or restrictions of other countries. In some, perhaps, these laws are made by representative bodies, or, it may be, by the *people of these states*, and, in others, by the lords of the treasury, or the boards of trade, or by the proclamation of the sovereign; and in all these cases, no question can be made of the perfect legality of our acts of congress being made dependent upon such contingencies. It is, in fact, the only possible mode of meeting them, unless congress is kept constantly in session. The same is true of acts of congress by which power is vested in the President to levy troops or draw money from the public treasury, upon the contingency of a declaration or an act of war committed by some foreign state, empire, kingdom, prince, or potentate. If these illustrations are not sufficient to show the fallacy of the argument, more would not avail.

Judgment, that the respondent take nothing by his exceptions and motion in arrest, and a fine to the state treasury of —— and costs.