THE STATE, MICHAEL SANDFORD, RELATOR, v. THE COURT OF COMMON PLEAS OF THE COUNTY OF MORRIS.

1. The Chatham local option law declares the retail of ardent spirits without license to be unlawful, and provides that no license shall be granted if a majority vote of the township is for "no license." *Held* —that the act is constitutional.
2. That the legislature, under the power to make police regulations, may prohibit the retail of alcoholic stimulants.
3. That municipal corporations and townships may be invested with authority to regulate or prohibit the retail of intoxicating drinks.

On application for *mandamus*.

Argued at June Term, 1872, before Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the motion, *H. C. Pitney.*

Contra, *A. Mills* and *C. Parker.*

The opinion of the court was delivered by

VAN SYCKEL, J. This application is made to test the constitutionality of what is termed the Chatham local option law.

The provisions of the act (*Laws,* 1871, *p.* 1470,) are substantially that it should be lawful for the persons qualified to vote at the next annual town meeting, to determine by ballot whether thereafter license to sell spirituous liquors should be granted; that if it should appear that a majority of votes were cast for "no license," it should not thereafter be lawful to grant any such license until otherwise decided by a contrary vote at some subsequent town meeting; that from and after the passage of the act, it should not be lawful for any person within said township, without a license for that purpose first had, to sell by less measure than one gallon, and any person so selling without license should be adjudged guilty of a misdemeanor; and lastly, that so much and such parts of all acts and parts of acts as are inconsistent with this act, be and are repealed.

State, ex rel. Sandford, v. Court of Common Pleas of Morris.

At the time prescribed by the act, a majority of the legal voters of said township voted "no license."

At the following May Term of the Morris Common Pleas, the relator, by petition, signed and verified as by the act "concerning inns and taverns" is required, applied for a license to keep an inn and tavern in Chatham.

The court having refused to entertain said application on the ground that it had no power to grant it, this court is asked to send its writ of *mandamus* to the court below, in aid of the applicant's petition.

The local option law is alleged to be in conflict with that article of our state constitution which provides that the legislative power shall be vested in a senate and general assembly.

It must be conceded that this law can have no sanction if it is a delegation of the law making power to the people of the township.

If the right to declare what the law shall be in one case, may be referred to the people, the right to do so may be given in all cases, and thus the legislature may divest itself wholly of the power lodged in it by the fundamental law, until by subsequent legislation it shall be resumed. It is also obvious that it is not competent to delegate to the people the right to say whether an existing law shall be repealed or its operation suspended. To say that what is now the law shall not hereafter, or shall not for a specified time be the law, is in effect to declare the law to be otherwise than it now is, and is a clear exercise of the law making power. The will of the legislature must be expressed in the form of a law by their own act. If it is left to the contingency of a popular vote to pronounce whether it shall take effect, it is not the will of the law makers, but the voice of their constituents which moulds the rule of action. If the vote is affirmative, it is law; if in the negative, it is not law. The vote makes or defeats the law, and thus the people are permitted unlawfully to resume the right of which they have divested themselves by a written constitution, to declare by their own direct action what shall

be law.   The cases upon this subject, so far as they assert the principles above stated, have my entire concurrence.   *Parker* v. *Commonwealth*, 6 *Barr* 507 ; *Rice* v. *Foster*, 4 *Harrington* 479 ; *Maize* v. *State*, 4 *Ind.* 342 ; *State* v. *Parker*, 26 *Vt.* 357 ; *Santo* v. *State*, 2 *Iowa* 165 ; *Paterson* v. *Society*, &c., 4 *Zab.* 385.

The test will be whether this enactment, when it passed from the hands of the law-giver, had taken the form of a complete law.   It denounces as a misdemeanor the selling of liquor without license ; so far it is positive and free from any contingency.

It left to the popular vote to determine, not whether it should be lawful to sell without license, but whether the contingency should arise under which license might be granted.

It was not submitted to the voters of Chatham to say whether there should be a majority vote in favor of license before license could be granted ; the law as framed declares that there shall be such majority vote.   The operation of the first and second sections of the act " concerning inns and taverns " is not suspended by the declaration of the popular will, but the act itself modifies those sections, and makes it a condition of granting license that there shall be a majority vote.

It is the law which makes the majority vote necessary, and not the voice of the people.

Whether the vote is aye or no, the law at all times is the same, and requires the majority vote as a condition precedent to the granting of license.

If a supplement had been passed requiring instead of twelve reputable freeholders, the signatures of a majority of the legal voters of the township to the applicant's petition, would its constitutionality be challenged ?

Upon principle it makes no difference whether the recommendation of the majority is expressed by ballot at a town meeting, or in the form of a certificate.

It is competent for the legislature to prescribe the mode in which it shall be done.

Under the general law, the applicant could not call into exercise the power of the court until twelve freeholders petitioned in the manner therein directed. Under the special act in question an additional restriction is imposed, but it is imposed by the law itself and not by the people.

If the twelve freeholders under the old law do not certify, the court is restrained from acting; if they do certify, the court can exercise its discretion. So if the majority do not vote for license, the power of the court cannot be invoked; if they do vote for license, it may.

If the twelve freeholders shall not deem it conducive to the public good the privilege is denied, so if the majority shall regard it as inimical to the public welfare to permit the retail trade, the sale must abide under the penalty denounced by the law. The only difference is that under the special act the majority express their judgment as to all applications in gross, while under the general law twelve freeholders act upon them in detail.

The fact that they vote " no license " does not make the law one way, or that they vote " license " the other way.

The vote of the people may be changed, but the rule that a majority vote shall be essential remains unaltered.

The legislature has pronounced what the law shall be, and it cannot be and is not abrogated, changed or altered by the popular expression.

The leading cases of Rice v. Foster, and Parker v. Commonwealth, are distinguishable in principle from this.

In those cases, the prohibition and penalty were not denounced by the law itself, but by the popular vote. The selling of liquor was not pronounced to be unlawful; it was referred to the people to determine whether it should be restrained.

So in the law proposed to be passed at the last session of our legislature; " the offence defined by the act could not be committed unless the voters of the town determined that licenses should not be granted."

But if this is construed as an act authorizing the township

by a majority vote to prohibit the retail traffic in liquors, it may still be supported.

The right of the legislature to grant the power of local government to municipalities is conceded, and it is immaterial whether the enactment conferring it is regarded as a declaration of the supreme legislative will and strictly a law, or merely as a concession of a grant by the legislature, as the representative of the sovereignty of the people.

Such legislation has become so woven into our system of government, and its exercise as an appropriate function of the law-giver has passed so long unchallenged, and has been so repeatedly recognized by the courts, that it cannot be permitted now to be called in question.

Under the authority to establish police regulations, municipal corporations may be invested with power to make ordinances to promote the health or contribute to the safety of the community.

Noxious trades may be restrained, the storage of highly inflammable or dangerous materials may be prohibited, disorderly houses may be suppressed, and sports, exhibitions and public performances regulated, restrained or prohibited.

It would not be pretended that authority could be delegated to the corporate body to pronounce how real estate should descend, or personal property be distributed within the city limits.

In almost every city charter, the right to regulate or restrain the sale of intoxicating liquors is expressly conferred, and it could be done only upon the theory that it is a police regulation, and not strictly an exercise of the law-making power.

This species of property is clearly within the same rule, which permits the corporate body under legislative sanction to determine for itself whether gunpowder or nitro glycerine may be manufactured or stored within its limits.

While alcoholic stimulants are recognized as property and are entitled to the protection of the law, ownership in them is subject to such restraints as are demanded by the highest

State, ex rel. Sandford, v. Court of Common Pleas of Morris.

considerations of public expediency. Such enactments are regarded as police regulations, established for the prevention of pauperism and crime, for the abatement of nuisances, and the promotion of public health and safety. They are a just restraint of an injurious use of property, which the legislature has authority to impose, and the extent to which such interference may be carried must rest exclusively in legislative wisdom where it is not controlled by fundamental law.

It is a settled principle, essential to the right of self-preservation in every organized community, that however absolute may be the owner's title to his property, he holds it under the implied condition " that its use shall not work injury to the equal enjoyment and safety of others, who have an equal right to the enjoyment of their property, nor be injurious to the community."

Rights of property are subject to such limitations as are demanded by the common welfare of society, and it is within the range and scope of legislative action to declare what general regulations shall be deemed expedient.

If therefore the legislature shall consider the retail of ardent spirits injurious to citizens, or productive of idleness and vice, it may provide for its total suppression. Such inhibition is justified only as a police regulation, and its legality has been recognized in well considered cases.

It is neither in conflict with the power of congress over subjects within its exclusive jurisdiction, nor with any provisions of our state constitution, nor with general fundamental principles. *Cooley on Cons. Limitations, p.* 583, and cases there referred to; *Thurlow* v. *Massachusetts,* 5 *How.* 504.

It is not necessary to amplify discussion on this point, or to criticise the cases in detail. The view here taken underlies the whole subject of police regulations, and cannot logically be narrowed in its application.

An examination of the cases will show that some laws of this character have failed to receive the approval of the courts, because they invaded the right of the citizen to be secure

against unreasonable searches, or denied to him a fair trial before condemnation of his property.

It necessarily results that municipal corporations may derive the power to interdict the sale of intoxicating drinks from the same source to which they owe their authority to regulate it. The grant of power to prohibit the sale is no more the delegation of a right to make law than the grant of authority to regulate it.

Assuming this proposition, how may such authority be exercised by the corporate body?

Obviously, the only limitation must be contained in the terms of the grant itself, in the absence of any constitutional restraint. It is wholly immaterial how the power is exercised so long as it is in the mode appointed by the superior. In establishing the local government, the power may, at the discretion of the legislature, be lodged in the people to make rules for the regulation of their internal police by their direct vote in mass meeting assembled, or through designated officials by themselves duly elected. It would therefore be within the province of the legislature to confer upon a city the right, by a majority vote of its inhabitants, to pass ordinances for the regulation or suppression of the retail trade in ardent spirits.

This leads to the question whether Chatham township was in a position to receive such a measure of the power of local government?

The inhabitants of the several townships in this state are incorporated by a general law. They have heretofore without question exercised many powers through a direct vote of the people. They determine how the poor shall be kept, how much money shall be raised for roads, and how much, if any, for school purposes, and I know of no reason why they may not be vested with the same powers which are or could be granted to municipal corporations, including the one which has given rise to this contest.

Whether these laws are wisely framed to subserve their purpose is not to be determined by the court, but must be

referred to that branch of our government which has the exclusive right to enact or repeal them.

Regarding the established rule, that only in clear cases of excess should the action of the legislature be arrested by judicial interference, I am of opinion that the mandatory writ should be denied.

CITED in *State* v. *Wheeler*, 15 *Vr.* 88.