DISSENTING OPINION.
Nicholson, C. J.,
delivered a dissenting opinion, as follows:
By the act of 1869, ch. 28, the circuit of-Shelby county, the law court of Memphis, a municipal court of Memphis, the chancery court of Memphis, and the criminal court of Memphis, were abolished, and three circuit courts and one criminal in said county, and two chancery courts in said county were created. To fill these several offices an election was ordered to be held the fourth Thursday of May, 1870, the officers elected to hold their offices for the term prescribed by the constitution. It was provided that the judges and chancellors of the several courts established by this act should be the same as for circuit judges and chancellors, as established by law, but the county court of *523 Shelby county was authorized to- appropriate a sum sufficient to increase tbe salaries of said judges and chancellors not exceeding $2,000 each, additional thereto'. At the same time and by the same act, a new circuit court for Shelby county was created, to be held at Bartlette, in Shelby county, but no election was ordered to be held prior to the general election, which was held in August, 1870, under the new constitution.
The judges and chancellors for the several courts so created and established were elected on the fourth Thursday of May, 1870, and still hold their offices; except that upon the death of E. M. Yerger, his place was filled by the election of S. P. Walker, in'1872; and-Pay was elected in August, 1870, and still holds his office.
At the July term, 1870, of the county court of Shelby, in pursuance of the act of 1869, ch. 28, [it] ordered a payment of $2,000 to- the judges and chancellors out of the coiinty treasury, and in October, 1870, this order was declared to embrace Pay. It appears that after paying the compensation so ordered to the several judges for a period of time, at the January term, 1874, the county court rescinded the order made at previous terms for paying compensation to the several judges and chancellors. The foregoing agreed facts were submitted to Judge Henry Craft, elected special judge to fill the place of Judge Halsey, who was incompetent to try the cause.
Upon the facts agreed on, the following issues were submitted to the court:
1st. Is the 11th section of the act of December, 1869, a valid and constitutional provision?
2d. The county court having acted under said section 10 on the 12th day of July, 1870, and 11th October, 1870, ordering and allowing the said judges the sum of $2,000 per annum, to be paid out of the county treasury, is it in the power of the county court to rescind said order during their continuance in office?
*524 "d. Upon the death of said Yerger, and before the election of his successor, Hon. S. P. Walker, could the county court rescind said order so far as it applies to- his office?
4th. If it could, then could it vote and allow him additional compensation after he qualified as chancellor, to-wit: to the extent of $1,500, the said revision having (taken place while the Hon. W. L. Scott, appointed by the governor, was the incumbent of the office?
Judge Craft was of opinion that the plaintiff were entitled to recover on all the issues submitted, and gave judgment accordingly against the county court.
The county of Shelby has appealed.
1st. The first question is as to the constitutionality of the act of December, 1869, ch. 28, sec. 11, which provides that the county court of Shelby county may appropriate as much as $2,000 per annum in addition to the salary payable by the general state.
This act abolishes the existing common lav' and chancery court of Shelby county, and creates and establishes in their stead, common law, criminal and chancery courts for that county.
It is a separate .and independent act to furnish Shelby county alone with the necessary courts for the transaction of all business in that county, whether criminal, civil or chancery in its character. The act was passed by virtue of art. 6, sec. 1, of the constitution, -which authorizes the legislature from time to- time to' ordain and establish such circuit, chancery, and other inferior courts as may be necessary. And in pursuance of art. 6, sec. 7, which provides that the judges of the several courts "shall receive a compensation for their services to be ascertained by law, which shall not be increased or diminished during the time for -which they are elected.”
In providing for the powers .to be exercised by the three departments of the government, the constitution has vested in the legislature the power to ordain and establish ,as *525 many different courts as tbe wants of tbe county may require, and eacb to be distinct and independent of each other, as tbe legislature may determine.
Tbe power is conferred wit-bout limitation, and, therefore, it is competent for tbe legislature to establish a judicial system embracing all tbe counties of tbe state, arranged in circuits or districts; or it may create and establish special courts for such localities as may be deemed necessary and proper, as was said in tbe case of State Bank v. Cooper, 2 Yer., 615. “Tbe territorial limits of tbe jurisdiction and tbe extent and description of jurisdiction that the several courts shall have and exercise, are referred exclusively to tbe wisdom and discretion of tbe legislature.” The act in question is, therefore, free from constitutional objection, on tbe ground that it is specially confined to tbe creation and establishment of courts in one county.
2d. It was tbe policy of tbe legislature until a comparatively recent period to divide tbe state into judicial circuits or districts, arranging tbe same with an eye to as equal a distribution of tbe labor of tbe judges as practicable, and consequently fixing tbe same rate of compensation for tbe several judges filling like places; but there is no constitution restriction upon tbe legislature requiring such equal distribution of tbe labors, or such equality in tbe rate cf compensation. These are matters left by tbe constitution to tbe discretion of tbe legislature. It was therefore competent for tbe legislature in creating courts for Shelby county, in view of tbe peculiar circumstances of tbe case, to provide a rate of compensation for tbe judges of these courts larger than that fixed for other judges. Tbe facts agreed on in tbe case show constitutional reasons why tbe compensation allowed the circuit judges and chancellors in other portions of tbe state would be inadequate in the county of Shelby. Tbe duty as well as thei power is devolved upon the legislature to create and establish just as many courts as are demanded by tbe public wants; and if *526 in the discharge of this duty and the exercise of this power it becomes necessary to provide larger salaries in some localities than in others, there is no restriction upon so doing. There is, therefore, nothing unconstitutional in the act of 1869, ch. 28, sec. 11, so far as it recognizes the propriety of allowing to the judges in Shelby county a larger compen.sation than is allowed to other judges.
3d. But the legislature did not provide absolutely, by the act of December’, I860, that the compensation of the judges should be $4,500. It was provided that their compensation should be the same as other judges, which was $2,500, unless the county court of Shelby county should increase the amount out of the county treasury, not to exceed $2,000 additional. The power to- ascertain the compensation of judges is vested in the legislature, and it is a maxim in constitutional law that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Cooley’s Const. Dim., 116.
But it is not always essential that a legislature’s act should be a completed statute, which must in any event take effect as the law at the time it leaves the legislative department. A statute may be constitutional, and its taking effect may be made to depend upon some subsequent event. Cooley’s Const. Lim., 117; Brig Aurora v. U. S., 7 Cranch, 382; Ball v. Read, 13 Gra., 78; State v. Parker, 26 Vt., 357.
The meaning of the act of 1869, ch. 28, is that the legislature deemed it expedient and proper that the compensation of the judges should be fixed at $4,500, if the county court should agree to appropriate $2,000 of the amount-out of the county treasury, to do which the legislature, by the act, intended to give the necessary authority to the county court.
The expediency of allowing a compensation of $4,500 was definitely and finally settled by the legislature, depend *527 ent alone upon the condition that the county court would appropriate $2,000 in making up the amount. They did not mean to submit to the county court the expectancy of giving the judges $4,500, but merely to determine whether the county court would appropriate $2,000. The question of expectancy is settled by the legislature, but whether the statute is to become absolute as a law is made to depend upon an event to be determined by the county court. Upon the happening of that event, the compensation is ascertained by law to be $4,500.
4th. But the question next presents itself, did the county court have the constitutional power to make the appropriation towards paying the salaries of the judges'? The appropriation necessarily involves the power to impose the taxes necessary to raise the amount. The legislature has the power to authorize counties to impose taxes for county purposes. Const., art. 2, sec. 29. By the passage of the act of 1869, ch. 28, the legislature has virtually declared the successful establishment and operation of the courts created by the act to be a county purpose.
The constitution does not define what are county purposes, but it recognizes county, as political divisions of the territory of the state, essential in republican government; and the duties imposed on them are a part of the proper and necessary burden which the citizens must assume in the process of self-government. The expenses of securing a proper administration of justice, civilly and criminally, are incurred by the counties, and taxes imposed therefor. The relation between -the state government and the county government is so intimate that the distinction between state purposes and county purposes cannot be defined with accuracy, except in the cases in which it is done by the legislature. Courthouses are county purposes, and yet they are essential to state purposes in the administration of justice. The law treats the administration of justice l)v the circuit judges and chancellors as a state purpose, in *528 some respects, and as a county purpose in other respects. The state pays the expenses of criminal prosecution in one class of cases, and the counties in another. The administration of'justice by the justices of the peace in their civil districts and in the county courts is a county purpose, but it is no less a state purpose as part of the machinery of self-government. The establishment of courts, civil and criminal, in the several counties, is not less a county than a state purpose. There is nothing in the constitution nor in the nature and character of the relation between the county and the state which forbids the legislature to^ declare the establishment and maintenance of the necessary courts in a county, a county purpose, and as such to authorize the imposition of taxes to pay the expenses thereof. 15th Mo. Rept., 1.
oth. The next question is whether the county court has the power to reduce the compensation of the several judges by rescinding the order made in July and October, 1870? We have already determined that when the county ordered the appropriation to the compensation of the judges to be made, the condition on which the law fixing their salaries at $4,500 then became absolute. It then falls under the provision of the constitution which forbids the increase or diminution of the salaries during the period for which the judges were elected. This imohibition operates as well upon the county court as upon the legislature. The compensation provided for the judges was not intended simply for the persons who might happen to fill their offices when the law became absolute, but to all who might hold the offices during the constitutional term. The constitution and schedule provides that the terms of all judges, whether elected in May, 1870, or in August, 1870, should hold for eight years from the first of September, 1870.
In confirmation of the viéws expressed, it may be proper to allude to the fact that when the convention of 1870 was engaged in framing the present constitution, the act of *529 1869, ch. 28, was in force, and the election of the judges fixed therein for the fourth Thursday of May, 1870. This act was recognized hy the new constitution as one- of the laws then in force, and a knowledge of the existence of this law and a recognition of its validity it may well he presumed to have induced the adoption of the provision in the schedule which ordain that “all officers elected at or after the general election of March, 1870, shall hold their offices for the term prescribed in the constitution.”
I am therefore of opinion that the judgment below should be affirmed.